## J. J. McADAMS v. STATE.

No. A-4601.   Opinion Filed Feb. 10, 1925.
Rehearing Denied May 2, 1925.
(235 Pac. 241.)

(Syllabus.)

1.   Arrest—Arrest Without Warrant Held Lawful—As Incident to

**Lawful Arrest for Transporting Liquor, Person and Auto of Offender Searchable Without Warrant.** Where peace officers, without a warrant, on suspicion merely, illegally attempted to arrest a person suspected of the commission of a misdemeanor (transporting whisky), and as a sequence to such attempted arrest the offense is actually committed in the presence of and to the certain knowledge of the officers, the offender, under the circumstances set out in the text, may be legally arrested without warrant for the offense so committed in the officers' presence.

(a)   As an incident to such legal arrest the person and automobile of the offender may without a warrant be searched for contraband goods.

2.   **Continuance—That Accused and Nonresident Counsel Did not Know of Setting of Cases Insufficient Ground.** There is no adequate showing made that the court abused his discretion in not ordering a continuance of the trial.

Appeal from County Court, Stephens County; Eugene Rice, Judge.

J. J. McAdams was convicted of illegal transportation of intoxicating liquor, and he appeals. Modified, and, as so modified, affirmed.

H. M. Carr and Wilkinson & Seay, for plaintiff in error.

The Attorney General and Leon S. Hirsh, Asst. Atty. Gen., for the State.

BESSEY, P. J.   The plaintiff in error, J. J. McAdams, defendant in the trial court, was convicted in the county court of Stephens county of the illegal transportation of a quantity of whisky, with his punishment fixed by the court at a fine of $200 and costs, and confinement in the county jail for a period of 60 days.

The defendant was the owner of a new Cadillac automobile, of the value of $4,100. On the night of October 12, 1922, the defendant and two companions, a woman and another man, drove in this car from Duncan to Comanche. The three occupants of the car were sitting in the front seat of the car, on the return drive, at about 10: 30 p. m., when three peace officers in a Ford car followed and over-

took this Cadillac car at a point not far from Duncan. For the purpose of halting the car to search it for whisky these officers say that they shouted to the driver, the defendant, to stop. The two officers who testified at the trial say that the driver paid no heed to their commands; the defendant and his two companions testified that they heard no shouts or commands. The officers then shot into the car, shattering the rear glass window and puncturing the gas tank. The Cadillac car then stopped, and the occupants got out, and were placed under arrest. The defendant and his companions claim that their first intimation of their attempted arrest was when the shooting began. Two of these officers testified that after the first command to stop was disregarded they saw several packages thrown from the Cadillac car to the roadside.. At the time of the trial only two of the three officers who made this arrest were available as witnesses; the third appearing to have been a fugitive from justice on some criminal charge.

After the car stopped and the defendant and his companions alighted and were placed under arrest, the car was searched, and two empty whisky bottles were found in one of the side pockets. One of the officers remained with the persons under arrest, while the other two went back past the Ford car to search for the packages they say they saw thrown from the Cadillac car. Presently they returned with a half-gallon jar of corn whisky. The defendant and his companions were then taken to Duncan and lodged in jail, and the officers returned and took charge of the Cadillac car. Upon making further search along the roadside they found two more half-gallon jars of whisky near where they had found the first one at the time of the arrest.

The three persons arrested all testified that they were sitting together in the front seat of the Cadillac. The witnesses all agree that the two cars were driving over a rough, dusty road, at a speed of about 20 miles an hour.

The defendant and his companions testified that they had no whisky with them and threw none away. The two companions of the defendant were released from custody the day following their arrest, and the defendant alone was prosecuted, and his car was confiscated under condemnation proceedings.

The theory of the defense was that the whisky procured by the officers as evidence was "planted" in or near the Ford car by the officers making the arrest, for the purpose of laying a foundation for the confiscation of the Cadillac car. The character of the defendant and his witnesses, the two companions with him, was not assailed nor impeached.

The state admits that the attempted arrest at its inception was illegal, but insists that after the officers saw these packages of liquor thrown from the car the actual arrest was consummated legally, though without a warrant, for the reason that it was for an offense perpetrated in the presence of the officers.

If the theory of the defense be true, the officers committed a most reprehensible outrage upon the defendant; if the state's theory is correct, the defendant is guilty, and should suffer proper punishment. There was evidence tending to support both theories; and this court could not, if it so desired, substitute its opinion for the verdict of the jury on the weight of the conflicting testimony. Under such circumstances the findings of the jury on the facts cannot be disturbed.

An arrest has been defined as the taking, seizing, or detaining of the person of another, either by touching him or putting hands on him, or by an act indicating an intention to take him into custody and subject the person arrested to the actual control and will of the person making the arrest.

In this case, at the outset the defendant was merely suspected of having committed or being in the act of committing a misdemeanor, and the attempt to arrest the defendant on suspicion, without a warrant, was illegal. This court does not approve nor wish to seem to encourage peace officers in illegal practices, but here, after the initial illegal attempt to arrest proved futile, and the officers, as found by the jury, saw the defendant in act of violating the law, they then acquired the right to make the arrest without a warrant. Under the circumstances here the legal and the illegal acts of the officers are separable, and it becomes the duty of this court to sustain the legal portion of the transaction, including the search and seizure incident to the legal arrest. A different question would arise if the evidence conclusively showed that the arrest was for a misdemeanor on suspicion merely and without a warrant, and therefore illegal; under those circumstances the things seized, incident to such illegal arrest, would not be admissible in evidence if timely objections were made thereto.

It has been held that, where inmates of a house were suspected of being engaged in lascivious conduct, under statutory authority to arrest for a misdemeanor without warrant only when it is committed or attempted in the presence of the officer, an officer cannot without warrant, in the absence of breach of the peace, enter a dwelling upon the mere suspicion or belief that a misdemeanor is being committed therein for the purpose of viewing the inmates, and then arrest on the theory that the act is in his presence. Adair v. Williams, 24 Ariz. 422, 210 P. 853, 26 A. L. R. 278, and annotations.

Now, suppose that the officers, after an illegal attempt to search such a house, should retreat to some point from where they could see, through an open window, the inmates in lewd conduct, might they not then return and legally make an arrest for an offense committed in their presence, notwithstanding the initial attempt to arrest was illegal?

Reason would indicate that this might be done, although no cases are cited, nor have we been able to find any, on that point.

If the actual arrest in this case was lawful, and we hold that under the findings of the jury it was, the officers had a right, as an incident to that arrest, to search the Cadillac car for evidence of whisky, as was done. State v. Turner (Mo. Sup.) 259 S. W. 427.

Defendant claims that the trial court erred in refusing to grant a continuance. The record proper does not bear out this contention. At the time of trial no application for a continuance was made, and the defendant announced ready for trial. In this connection the defendant claims that some time prior to the trial he had employed an out of town attorney to represent him, and that neither he nor his attorney knew that the case had been set for trial on December 6th until it was called on that date. It is the duty of defendants and their attorneys to keep themselves informed of the setting of cases for trial. While it is a courtesy often extended and approved by the courts for the court or some officer of the court to notify nonresident attorneys of the setting of their cases, they are under no legal obligation to do so.

The fact that there is some evidence tending to support the defendant's theory that this prosecution may have been inspired by motives of cupidity on the part of the officers, in that they might have been interested in having this valuable car seized and confiscated, and the fact that the loss of this car to the defendant could properly be considered in mitigation of punishment, leads us to the conclusion that the court abused his discretion in assessing the severe punishment he did in this case.

The judgment of the trial court is therefore modified to a fine of $50 and costs, and confinement in the county

jail for a period of 30 days, and the judgment as so modified is affirmed.

DOYLE and EDWARDS, JJ., concur.