## CARL ABBOTT v. STATE.

No. A-5006.   Opinion Filed April 15, 1925.
(235 Pac. 550.)

(Syllabus.)

1. **Arrest—On Detection of Suspected Person in Commission of Misdemeanor, Arrest and Search not Unlawful.** When a peace officer observes a person in acts that reasonably lead him to suspect the commission of a misdemeanor and, without violating any constitutional right of the suspected person, makes an investigation and detects such person in the commission of a misdemeanor, his arrest and search of the person is not unlawful.

2. **Appeal and Error—Necessary Record for Review of Ruling on Application for Continuance.** In order that the ruling of the court on an application for a continuance may be reviewed in this court, it is necessary that said application be preserved in the record, with the ruling of the court thereon, with exception properly saved.

Appeal from County Court, Bryan County; S. W. Maytubby, Judge.

Carl Abbott was convicted of transporting intoxicating liquor, and appeals. Affirmed.

George F. Deck and McPherren & Hannah, for plaintiff in error.

George F. Short, Atty. Gen., and Chas. Hill Johns, Asst. Atty. Gen., for the State.

EDWARDS, J.. The plaintiff in error was convicted in the county court of Bryan county on a charge of transporting intoxicating liquors, and upon conviction by a jury punishment was fixed at imprisonment in the county jail for a period of 30 days and a fine of $200, and upon the judgment and sentence based thereon prosecutes this appeal.

Only two assignments of error are argued in the brief of the plaintiff in error as follows: First, that the evidence obtained by an unlawful search was used against plaintiff in error over his objection. Second, that the court erred in refusing to grant a continuance on the ground that one of the attorneys for the plaintiff in error was a member of the Legislature, then in session. These assignments will be considered in the order presented.

The evidence is brief, and is to the following effect: That on the date of the offense charged, Jim Kiersey, chief of police at Durant, saw the defendant walking on North First street, near Linn's store, carrying a grip; saw him go into the store. The officer then turned back and saw plaintiff in error leaving the store without the grip. The officer then went into the store, made inquiry, and found the grip which had been left on the porch at the rear of the store, and after picking the grip up he shook it and decided that it had whisky in it. The officer went around the store and saw the plaintiff in error attempting to go

through the fence in the rear and saw something sticking up under his coat, which he took to be a gun, and upon making an examination he discovered that instead of a gun it was a bottle containing some whisky, and then discovered that the plaintiff in error seemed to be under the influence of whisky. Whereupon the officer arrested the plaintiff in error and took him, with the grip, in a car to the county attorney's office, and on the request or demand of the officers, plaintiff in error unlocked the grip and in it were three half-gallon fruit jars of whisky. The officer did not have a warrant for arrest or a search warrant during any of the time in question. The plaintiff in error, in his own behalf, testified that he had the grip, but did not know what it contained; that he put it on the back porch of the store; that he had had a drink of whisky that morning and that the bottle in his pocket was comparatively empty; that he unlocked the grip at the county attorney's office, but did so because the officers had threatened to tear or cut it open.

That is all the material evidence in the case, and the question for consideration is: Was the arrest of the plaintiff in error and the search unreasonable within the meaning of section 30 of the Bill of Rights of our State Constitution, which provides that the right of the people to be secure in their person, house, papers, and effects against unreasonable searches or seizures shall not be violated. This clause of the Constitution does not forbid all searches or seizures, but forbids only those that are "unreasonable." Under this provision it is not permissible to whittle away the substantial guaranties of this section, and, on the other hand, it is not to be so strictly construed that proper and reasonable efforts of the constituted authorities to detect and punish crime shall be prevented.

This court, in the recent case of Berg v. State, 29 Okla. Cr. 112, 233 P. 497, held:

"In case of a lawful arrest, the arresting officer may

take from the person arrested any instruments of crime or anything else reasonably deemed necessary to his own or the public safety, and the use of such things on the trial of the person arrested is not objectionable as obtained by unlawful search and seizure."

And in the case of Davis v. State, 30 Okla. Cr. 61, 234 P. 787, the same rule is announced, citing authorities. See, also, McAdams v. State, 30 Okla. Cr. 207, 235 P. 241.

The authorities are simply to the effect that where an arrest is legally made, the arresting officer has a right as an incident of such arrest to search the person and immediate surroundings of the person arrested, and to seize those things the possession of which is unlawful, or which may be used in the commission of crime. A search of this kind, under such circumstances, is not within the inhibition of the Constitution. A peace officer in the discharge of his duty is not required to close his eyes, but when confronted by circumstances which reasonably cause him to believe that the law is being violated, he may observe a suspected person and follow up suspicious circumstances when it may be done without violating any constitutional restriction, and when in doing so the commission of the offense takes place in his presence, the arrest of the person committing such offense is lawful, and the search of the person and his immediate surroundings is not unreasonable within the meaning of the Constitution.

It is not essential that, under such circumstances, an officer have positive evidence of a violation of law before acting. For instance, he might see a bottle of what appeared to be whisky on the person of a suspected person. He could not be absolutely certain of the contents of the bottle without taking possession of it. He might see a suspected person carrying a jug, and if he is required to be absolutely certain of the contents before acting, transporting may be done practically openly.

It is not possible to state in general terms what acts

or circumstances would be sufficient to justify the act of an officer. They would vary under different conditions. Flight on the appearance of an officer, or abandonment of an article or container being transported, and such other circumstances or actions as would lead the guarded discretion of a prudent officer to believe that the law was being violated, would ordinarily be sufficient.

On the second assignment of error the plaintiff in error states that Hon. C. E. McPherren, one of the attorneys for the plaintiff in error, was a member of the state Senate, and that the same was in session at the time of the trial, and that request for a continuance was made on such grounds; that the same was denied by the court in violation of the provisions of section 583, Compiled St. 1921, which is as follows:

"The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just; provided, that if a party or his attorney of record is serving as a member of the Legislature or the Senate, sitting as a court of impeachment, or within ten days after an adjournment of a session of the Legislature, such facts shall constitute cause for a continuance, the refusal to grant which shall constitute error, and entitle such party to a new trial as a matter of right. * * *"

A consideration of this section has not heretofore been before this court, and no case has been called to our attention where a like statute has been construed.

The Supreme Court of Kansas, in Berry v. Dewey, 102 Kan. 593, 172 P. 27, construed the Kansas statute on this question and sustained a conviction where a continuance was denied. But the Kansas statute is different from ours, in that it gives the trial court discretionary power to prevent any abuse of the provisions of said statute.

The record, however, in this case does not show that any application for continuance was filed upon

this ground. The first mention made of this contention is in the motion for a new trial. The plaintiff in error was represented by Mr. Hannah, partner of Mr. Mc-Pherren, and Mr. George F. Deck, another attorney. At the hearing on the motion for a new trial, Mr. Hannah testified that he had no knowledge of a written application for a continuance having been filed. County courts are courts of record, and any application for a continuance, to be available as a predicate for assigning error, should be reduced to writing, verified, and duly filed, or should be made a part of the record in such a manner that it may be properly presented to the appellate court. Where a proceeding of this nature is had, and the record is not preserved, exception taken, and properly presented to this court, it will not sustain an assignment of error.

Finding no reversible error, the case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.