### GUS STRONG et al. v. STATE.

No. A-6079.  Opinion Filed Feb. 28, 1929.
(274 Pac. 890.)

Guy Talbot, for plaintiff in error Frank Johnson.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiffs in error, hereinafter referred to as the defendants, were convicted in the county court of Alfalfa county, on a charge of transporting intoxicating liquors, and each sentenced to pay a fine of $50 and serve 30 days in the county jail.

The evidence shows that Dar Goff, sheriff of Alfalfa county, saw the defendants and Donald Brokovski drive away in a car, and he went out on the road and watched until they returned, and, as they were coming down the road approaching the sheriff, he turned out in the middle of the road and stopped the car in which the defendants were riding, that in the car was Strong, Johnson, and Brokovski. The sheriff answered the following questions:

"Q. Did you stop them? A. Yes, sir.

"Q. Talked to them? A. Yes, sir.

"Q. Did you say anything about looking through the car? A. Yes, sir, they said go ahead, you won't find anything.

"Q. Did you? A. Yes, sir.

"Q. What did you find?

"Mr. Talbot: Objected to as incompetent, irrelevant and immaterial.

"Mr. Miller: We object to that as incompetent, irrelevant and immaterial.

"By the Court: Overruled.

"Mr. Miller and Mr. Talbot: Exceptions.

"A. Five pints of whisky."

The record further discloses that the witness Donald Brokovski entered a plea of guilty to the charge and testified against the defendants Guy Strong and Frank Johnson, detailing where he went and where the whisky was purchased by defendant Strong. Brokovski claims to have seen Strong give Bill Giles a $5 check and $1 for two pints of whisky, and claims that at another place later they got another pint.

The defendants testified in their own behalf, and denied any knowledge of the whisky being in the car, and called Bill Giles as a witness, who testified that he did not sell either of the defendants whisky.

The defendant Johnson admitted that he told the sheriff to go ahead and search the car, and he was surprised when the sheriff found the whisky in the car. Defendant Strong denied having anything to do with the purchase of the whisky or putting it in the car. This is in substance the testimony.

The defendants objected to the introduction of the testimony of Sheriff Goff, on the ground that it was obtained unlawfully, as the witness Goff had no search warrant and his search of the car was unlawful and his testimony as to the whisky being in the car was inadmissible. It is admitted by the state that the sheriff, when he stopped the car in which the defendants were riding and told them he wanted to search the car, had no search warrant, nor did he have a warrant for their

arrest. This court has repeatedly held that evidence obtained by a search of defendant's home, person or car without a search warrant, for the sole purpose of obtaining evidence against the party charged, is in violation of article 2, section 30 of the Bill of Rights, which is as follows: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

This court has held that evidence obtained by a search of defendant's car without a search warrant is inadmissible against the parties charged, where proper or timely objections were made.

In Klein v. State, 26 Okla. Cr. 173, 223 P. 201, this court said: "Where the possession of an unlawful thing is open and obvious, so that anyone within reasonable distance can readily see it, no search warrant is necessary, and the evidence thus obtained may be received upon the trial of the accused. However, a search implies invasion and quest, and that implies some sort of force, actual or constructive, much or little. The right of the citizen to be secure in his person and possessions from such unlawful search and seizure is as secure as the bill of rights can make it (Const. art. 2, § 30), and this right should be respected by officers and courts."

In Childress et al. v. State, 31 Okla. Cr. 308, 238 P. 218, this court said: "It is too familiar to require citation of authority that it is the settled doctrine in his state that, in order to make an arrest and seizure without a warrant under section 7014, C. S. 1921, there must be a violation of the prohibitory liquor laws committed in the presence of the arresting officer, and a conviction must be reversed where evidence procured by an of-

ficer of the court by means of an unauthorized search and seizure is admitted over the objections of the defendant."

This court, in the case of Britton v. State, 34 Okla. Cr. 391, 246 P. 666, in the syllabus, said: "Search of a car without warrant of arrest or search warrant or knowledge by officers that it contained whisky is held illegal, and evidence so obtained should have been excluded upon timely objection." Gore v. State, 24 Okla. Cr. 394, 218 P. 545; Keith v. State, 30 Okla. Cr. 177, .235 P. 634; Combest et al. v. State, 32 Okla. Cr. 47, 239 P. 936; Klein v. State, supra; Britton v. State, supra.

. The trial court, in its sixth instruction, properly declared the law to the jury, which instruction is as follows: "You are instructed by the court, that under the laws of this state, no search of the automobile mentioned in evidence could be had by the sheriff at the time mentioned, unless he had a search warrant for the purpose or unless the defendant gave him permission so to do, therefore if you find and believe from the evidence in this case, beyond a reasonable doubt, that at the time of the search of the automobile by the sheriff as mentioned in the evidence, the defendants gave him their permission to make such search of the same, then and in that event you will consider his testimony and state's exhibit 'A' and 'B' along with all the other evidence in the case touching the guilt or innocence of the defendant or either of them. On the other hand, you are instructed that if after a consideration of the evidence in the case you find that at the time of the said search of said automobile by the sheriff the defendants, and each of them, did not give him permission to search said car, or if after a consideration of all the evidence in the case, you entertain a reasonable doubt as to whether the defendants, or either of them, did give their permission to the sheriff to search said car

then in either of these two events, you shall wholly disregard all the evidence of the sheriff in this case concerning such search of said car, and the finding therein by him of any whisky, and shall not consider his evidence nor that of stated exhibits 'A' and 'B' for any purpose whatever in the case, but shall utterly exclude the same from your minds or consideration in determining the guilt or innocence of the defendants. But shall only consider such other evidence in the case touching the guilt or innocence of the defendants, if any, as defined in the other instructions of the court."

The court's instruction clearly advised the jury as to its duty. The sheriff did not claim that he had any knowledge the defendants were transporting whisky, or that, after he stopped their car, he could see the container in which the defendants had the whisky; therefore the action of the sheriff in searching the car 'without a warrant to search or a warrant for the arrest of the defendants was unlawful, unless the statute which creates a misdemeanor contains some provision to the contrary. Mere suspicion that it is being violated will not justify the arrest of the defendants. Criminal statutes must be strictly construed, and applied in harmony with the rule of common law. A well-settled doctrine is that an arrest for a misdemeanor cannot be made without a warrant, unless the offense is committed in the presence of the officer, nor can the officer search a defendant's car unless he has knowledge that the car contains whisky. Britton v. State, supra.

In Carroll v. U. S., 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790, the Supreme Court of the United States stated the facts in the case, which are as follows: "Cronenwett and Scully were in an apartment in Grand Rapids. Three men came to that apartment, a man named Kruska, and the two defendants, Carroll and Kiro. Cronenwett was introduced to them

as one Stafford, working in the Michigan Chair Company in Grand Rapids, who wished to buy three cases of whisky. The price was fixed at $130 a case. The three men said they had to go to the east end of Grand Rapids to get the liquor and they would be back in half or three-quarters of an hour. They went away and in a short time Kruska came back and said they could not get it that night, that the man who had it was not in, but that they would deliver it the next day. * * * The proposed venders did not return the next day and the evidence disclosed no information of their failure to do so. One may surmise that it was suspicion of the real character of the proposed purchaser, whom Carroll subsequently called by his first name when arrested in December following. Cronenwett and his subordinates were engaged in patrolling the road leading from Detroit to Grand Rapids, looking for violations of the Prohibition Act. This seems to have been their regular tour of duty. On the 6th of October, Carroll and Kiro, going eastward from Grand Rapids in the same Oldsmobile roadster, passed Cronenwett and Scully some distance out from Grand Rapids. Cronenwett called to Scully, who was taking lunch, that the Carroll boys had passed them going toward Detroit and sought with Scully to catch up with them to see where they were going. The officers followed as far as East Lansing, half way to Detroit, but there lost trace of them. On the 15th of December, some two months later, Scully and Cronenwett, on their regular tour of duty, with Peterson, the state officer, were going from Grand Rapids to Ionia, on the road to Detroit, when Kiro and Carroll met and passed them in the same automobile coming from the direction of Detroit to Grand Rapids. The government agents turned their car and followed the defendants to a point some 16 miles east of Grand Rapids, where they stopped them and searched the car. They found behind the upholstering of the seats, the filling

of which had been removed, 68 bottles. These had labels on them, part purporting to be certificates of English chemists that the contents were blended Scotch whiskies, and the rest that the contents were Gordon gin made in London. When an expert witness was called to prove the contents, defendants admitted the nature of them to be whisky and gin. When the defendants, were arrested, Carroll said to Cronenwett, 'Take the liquor and give us one more chance and I will make it right with you' and he pulled out a roll of bills of which one was for $10.00."

The court held that the fact that the defendant had previously agreed to deliver whisky to the enforcement officers, and the further fact they came along driving the same automobile was sufficient to show that the officers had sufficient knowledge, and the actions of the enforcement officers were not unlawful under the facts and circumstances disclosed by the record. Further in the opinion, the court says: "Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable

cause for believing that their vehicles are carrying contraband or illegal merchandise."

This court has repeatedly held that, if the officers had knowledge that an offense was being committed, he had the right to search without a warrant, and to arrest the party committing the offense without a warrant, but that the officer must have some knowledge, not mere suspicion, an offense is being committed before he is authorized to stop the occupants of an automobile on a public highway and search the same without a warrant for the arrest of the occupants, or to search the car. Those rightfully within the state entitled to the use of the public highway have a right to the free passage without interruption and without being subject to the inconvenience and indignity of such a search.

In this case it is contended that the defendants, when the car was stopped by Sheriff Goff, waived their constitutional rights, and consented to their car being searched. The question to be determined in this case is, Does the fact disclosed by the record show that the defendants waived their constitutional right? The constitutional right against the unlawful search and seizure is a personal one, and the defendant may waive such right. As disclosed by the record in this case, the question was, Did the defendants voluntarily waive their constitutional right? The court properly submitted to the jury the law as to whether or not the defendants had waived their right, and the jury found they had. The verdict is supported by the evidence. Baker v. State, 35 Okla. Cr. 62, 248 P. 846.

Some other contentions are raised by the defendant, but none of them have sufficient merit to warrant a reversal of this case.

The case if affirmed.

EDWARDS, P. J., concurs.