## RALPH BUSH v. STATE.

No. A-9342.   March 25, 1938.
(77 P. 2d 1184.)

E. Hamilton and Gerald Spencer, both of Chickasha, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for the State.

DAVENPORT, P. J. The parties in this opinion will be referred to as they appear in the trial court. The defendant, Ralph Bush, was charged with the unlawful possession of intoxicating liquor with the willful and unlawful intent then and there on the part of the said Ralph Bush to barter, sell, give away, and otherwise furnish said liquor to others. The defendant was tried, convicted, and sentenced to pay a fine of $200 and costs and to be imprisoned in the county jail for 120 days. From the judgment and sentence, the defendant appeals.

Before the case was called for trial, the defendant moved the court to suppress the evidence in the cause for the reason that said seizure and search were made without authority of law and in violation of the constitutional rights of this defendant. Testimony was taken on the motion of the defendant to suppress the evidence. The defendant Bush testifying in his own behalf that on the night of December 5, 1936, Ben Foreman, Claude Sweeney, and J. W. Hite came up to where he was; "I drove up in my car, after dark, I guess about 7 o'clock, and a car was coming up the street about two or three blocks away; I got out of the car and was sitting on the porch; I did not know at the time the officers were in the car; they drove up to the corner and made a 'U' turn and came back and looked in my car. They raised the turtle back first and then looked in the seat and seized eighteen pints of whisky, and arrested me."

On cross-examination witness stated:

"The officers did not pass my car prior to the searching of it; at the time I did not know it was officers; they were three or four blocks down the street and came on up and turned at the corner, made a 'U' turn and came back. I did not take a container of liquor to the house out of my car; there was no one with me; I had parked my car before the officers drove up; the officers did not follow me, I came around from the north and they came from the south; they told me they had been following a car and I cut in between them."

Ben Foreman, a deputy sheriff, was called by the state and testified in substance that:

"Some officers and myself searched the car of the defendant on December 5, 1936, for liquor. We were passing his house when he got out of the car and started to the house with some kind of a package, we thought it was whisky. I did not know it was whisky, it was a package of some kind; we drove to the corner and came back. In the meantime he had set down whatever he had, if he had anything, and had shut the car and was sitting on the porch. We drove up and pulled in there and I went around to the east side of the car; his car was headed east, the porch was south of the car; I talked to him but I don't know what I said. Shortly after I got there Rlaph just said himself, 'Well, you got me this time.' Q. Was that before the search? A. It was before I had seen any liquor myself. Q. Did you say anything to him about searching his car before you did? A. I don't know as I did. However, after a bit I looked in the car door and saw the whisky sitting in the seat; three packages of it."

The witness further stated it looked like whisky:

"It was done up in packages with plain wrapping paper and twine around it, like all whisky is. I opened the door, and I think about that time Mr. Hite and Claude Sweeney was opening the turtle back; the containers were in the front seat of the car; we did not make a search for the package we saw him carry into the house."

On cross-examination witness stated the packages were wrapped up. "No, sir, I did not see the brands."

J. W. Hite testified:

164

"I was undersheriff of Grady county, on the 5th day of December, 1936; in company with Ben Foreman and Mr. Sweeney we searched this defendant's car; we were going up past his house from the south, he got out of the car and started to the house with a bundle, and I don't remember who it was said there he is now unloading some liquor, any way we turned our car and drove back; Mr. Sweeney and Ben Foreman was in the front and they got out first; I went around to the turtle back; Mr. Foreman found the liquor; I did not have any conversation with the defendant before I searched the turtle back of his car; Mr. Foreman had some conversation with him. I saw the whisky through the glass in the door, as I remember, the glass was up. The only way I could tell it was whisky it was wrapped up in the usual six packages, wrapped like all of it is."

On cross-examination witness stated:

"It was about 7 o'clock, it was getting dark; it was light enough I could see in the window, yes, sir."

The motion of the defendant to suppress the evidence was overruled and the defendant excepted. A jury was impaneled and the trial proceeded on the charge against the defendant. The first witness called in behalf of the state was Ben Foreman, who stated he had occasion on the 5th of December, 1936, to arrest the defendant at his home on South Third street.

"I could not tell the number of his house; we were passing his house coming from the south, Mr. Hite and Claude Sweeney were with me, when we saw the defendant Ralph Bush starting toward the house with something under his arm a package of some kind. We drove past the house and came back and drove in the driveway behind his car; when we drove up he was sitting on the porch with his car doors closed. We drove in and stopped and I got out and went around on the right side of the car; there were some words said prior to his statement, which I believe was this, 'Well, you got me this time.' After he made that statement I looked in the car and saw three packages, I could tell by looking at them the packages contained whisky. Mr. Sweeney went around to the other side of the car and raised the turtleback; there was other conversation but I don't re-

member what the conversation consisted of. We found 18 pints of whisky in the car."

On cross-examination witness stated:

"We did not have a search warrant. Q. You testified here last Saturday that the defendant said, 'You got me now boys.' When did he make that statement, before you went to the car or after? A. It was about seven o'clock in the evening the best I can remember. The sun went down quite a bit earlier that evening. Q. You looked in the car did you? A. Yes, sir, with a flashlight. Q. Wasn't that making a search? A. We were looking for whisky. Q. You were making a search and you did not have a search warrant? A. No, sir. Q. In this case you compared your notes with Mr. Hite? A. No, sir, not today. Q. You did Saturday? A. No, not me, it was Mr. Hite comparing notes with me."

J. W. Hite, called on behalf of the state, testified in substance the same as the witness Foreman, except he did not hear the conversation between Foreman and the defendant, and did not know there was any liquor in the car until his attention was called to it by Mr. Foreman. They did not have any search warrant to search the defendant's car.

The defendant has assigned the following errors alleged to have been committed by the trial court:

"1. The court erred in overruling a motion to suppress the evidence.

"2. That the court erred in admitting incompetent, irrelevant and immaterial testimony.

"3. That the evidence is wholly insufficient to show that the defendant committed a public offense against the laws of the state of Oklahoma.

"4. That the court erred in not directing the jury to return a verdict of not guilty pursuant to the motion and request of the defendant filed at the close of all the evidence.

"5. That the seizure of the whisky in this case was absolutely illegal and in contravention of the constitutional

rights of the defendant; that no search warrant was ever issued as required by law."

The only error it is deemed necessary to consider is the first assignment, wherein it is alleged that the court erred in overruling the motion to suppress the evidence.

The testimony on the motion to suppress as well as in the trial of the case shows that the defendant had driven to his home about 7 o'clock in the evening, stopped his car, and went toward his house with what the state witnesses claim was a bundle under his arm; the three state witnesses drove up the street, turned and came back and drove in and upon the premises of the defendant on the driveway in the rear of his car. The witnesses for the state admit they had no warrant to search his premises or his car, and there is nothing in the record to show they had a warrant for the arrest of the defendant. The state witnesses admit the defendant was at his home when they drove in and upon the premises on the driveway in the rear of his car; that they got out of the car and one witness went to the turtleback and raised it; another went around to the other side of the car and raised the hood; the witness Ben Foreman makes an effort to try to justify the unlawful act of the officers going onto the premises of the defendant and searching by saying he thinks the defendant said, "You got me this time boys," or words to that effect. The car doors were closed and the defendant was peaceably sitting on his porch when these officers went upon his premises and proceeded without any charge or reason whatever to search his car, one searching one part and another another part of his car. They do not attempt to say the defendant gave them permission to search the car or they told him they were going to search it, but willfully and unlawfully proceeded to make the search and found a quantity of whisky. Had to use a flashlight to see into the car before they could tell what was in the car.

Ballentine's Law Dictionary, p. 117, defines a "search" as follows:

"A search implies a quest by an officer of the law. The quest of the officer acts upon the things themselves, it may be secret, intrusive or accomplished by force."

24 Ruling Case Law, p. 717, defines an "unlawful search" in part as follows:

"An unlawful search is an examination or inspection without authority of law of one's premises or person, with a view to the discovery of stolen, contraband or illicit property, or for some evidence of guilt to be used in the prosecution of a criminal action."

The right of an individual to be exempt from such searches is guaranteed by the Fourth Amendment to the Constitution of the United States, and the substance of the amendment is incorporated in the Constitution of the several states.

The record in this case shows the officers making the search entered upon the curtilage of the home of the defendant for the purpose of making a search of the defendant's car. The officers drove into the driveway on the curtilage of the defendant's home; they did not have a warrant for defendant's arrest or to search his car or his home; they were trespassers from the moment they left the street and entered upon the curtilage of the defendant's home. They admit they had not seen the defendant commit any offense and could not see what was in his car; they testify the defendant drove up to his home and got out of his car with a package under his arm. The officers did not know what it contained. Have we reached a point in law enforcement that a man cannot peaceably go to his home and take a bundle or package from his car to the house without the officers of the law insulting and outraging him by driving upon his premises and searching his car? We think not. The home of an individual is his castle, and anyone, be he an officer or private citizen, who enters and trespasses upon

the same without lawful authority, does so at his peril. It is difficult to understand why men sworn to enforce the laws of our state will violate the law in an effort to secure evidence against an individual. In this case two deputies and a deputy United States marshal willfully violated the law and trespassed upon the rights of a citizen of this state, be he guilty or not of the crime charged.

This court has so often passed on the question involved in this case that it seems a waste of time to cite authorities. In Strong et al. v. State, 42 Okla. Cr. 114, 274 P. 890, this court in the first paragraph of the syllabus stated:

"The search of a car without warrant of arrest or search warrant or knowledge by the officer that it contained whiskey, held illegal, and evidence obtained should be excluded upon timely objections." Britton v. State, 34 Okla. Cr. 391, 246 P. 666.

In Condron et al. v. State, 31 Okla. Cr. 130, 237 P. 465, the court said:

"It has been repeatedly held by this court that, where the offense is not a felony, an officer cannot arrest without a warrant, unless the offense was committed or attempted in his presence, and that, where the officer does not know of the act constituting the offense, it is not committed in his presence." Keith v. State, 30 Okla. Cr. 168, 235 P. 631.

It is not deemed necessary to extend this opinion further, as the record clearly shows all the evidence introduced by the state was secured by an unlawful search and seizure. The court erred in overruling the motion of the defendant to suppress the evidence, and in overruling his motion for a new trial.

There being no competent evidence to sustain the verdict and judgment, the case is reversed and the case ordered dismissed.

DOYLE and BAREFOOT, JJ., concur.