The STATE of Oklahoma, Plaintiff in Error,

v.

John Bill EDWARDS, Defendant in Error.

No. A–12427.

Criminal Court of Appeals of Oklahoma.

May 1, 1957.

· Mac Q. Williamson, Atty. Gen., J. Howard Edmondson, County Atty., and Ted Flanagan, Asst. County Atty., Tulsa County, Tulsa, for plaintiff in error.

. Ward & Frazier, Tulsa, for defendant in error.

: ·POWELL, Judge. :

This is an appeal by the State of Oklahoma on a reserved question of law, from an order of the district court of Tulsa County wherein a motion of John Bill Edwards, defendant, to suppress evidence of the violation of prohibitory liquor laws obtained by a claimed insufficient search warrent, was sustained and a judgment of "Not guilty" was entered in favor of the defendant.

· The record discloses that deputy sheriff William L. Bliss swore to an affidavit and application for a search warrant for intoxicating liquor before one of the judges of the court of common pleas of Tulsa County, describing a certain specific motor vehicle sought to be searched. A search warrant was thereupon issued, and thereafter the deputy sheriff executed said search warrant by causing the car described to be stopped on the streets in the city of Tulsa, searching the same, and seizing a large quantity of tax-paid whiskey and other liquor. The driver of the car, John Bill Edwards, the defendant, was placed under arrest and was charged with unlawful possession of intoxicating liquor, second and subsequent offense.

; A preliminary information was filed in the court of common pleas of Tulsa county, charging the defendant with unlawful possession of intoxicating liquor, second and subsequent offense. Thereafter a "Motion to suppress", and later a "Supplemental motion to suppress" were filed, attacking the sufficiency of the affidavit and the search warrant. These motions were overruled by the examining magistrate, a preliminary hearing was held and the defendant bound over for trial in the district court.

· In the district court the defendant filed a "Motion to quash information", and a "Motion to suppress". He apparently abandoned the first motion, but urged his motion to suppress.

· On stipulation, the transcript of the proceedings held in the court of common pleas was admitted in evidence in the district court, and considered by the court in ruling on the defendant's motion to suppress filed in that court.

. The district court, after reading the transcript of the proceedings had before the examining magistrate at the preliminary hearing, rendered a written opinion or judgment, sustaining the defendant's motion to suppress, and on stipulation that said transcript be considered by the court as the evidence in the case, found the defendant not guilty.

Reversal is sought by the State as to certain questions of law involved and ruled on adversely to the State. Three propositions are advanced that shall be considered in the order presented.

. It is first argued "That the trial court erred in considering incompetent, irrelevant and immaterial evidence admitted at the preliminary hearing over the objections of the State, in drawing its findings of fact and conclusions of law."

. Under the above proposition it is pointed out, as we have already recited, that the only testimony before the district court was that introduced at the preliminary hearing. At the preliminary the examining magistrate, over the objections of counsel for the State, permitted defense counsel to cross-examine deputy sheriff William L. Bliss in an effort to show that at the time he signed the affidavit for a search warrant he actually knew the name of the owner of the automobile that he sought to search,

and for such reason should have disclosed the name rather than naming the operator "John Doe". Witness admitted that he had known the defendant prior to the time of the filing of the affidavit for a search warrant, and knew the car that he drove.

It is argued that the trial court should have rejected from its consideration the evidence in question as incompetent, where timely objection was made by the county attorney. Cited in support of such contention are the following cases from this court: Nance v. State, 50 Okl.Cr. 17, 294 P. 1097; Davidson v. State, 52 Okl.Cr. 305, 4 P.2d 131; Rausch v. State, 65 Okl.Cr. 52, 82 P.2d 687; Wagner v. State, 72 Okl.Cr. 393, 117 P.2d 162.

■ In the Nance case this court in paragraph one of the syllabus, said:

"Where the affidavit and search warrant are sufficient on their face, the evidence obtained by the search is admissible, and the court will not permit the accused, after the warrant has been executed, to show that the statements in the affidavit are not true, or to raise any question as to the accuracy or source of affiant's information or the means by which it was obtained."

■ Counsel for the defense agrees that the cited cases support the State's proposition, but asserts that the facts in the within case bring it within the holding in the case of Lee v. State, Okl.Cr., 297 P.2d 572, arguing that the question of whether or not deputy sheriff Bliss knew the defendant prior to signing the affidavit for a search warrant was first opened up by the State. We have carefully read the evidence and do not find that the questions asked by the county attorney justified the cross-examination complained of. It is true that the defense did call this officer as a defense witness and on cross-examination the State sought to show by him the name of the person in whom title to the automobile described in the search warrant was registered. The court did not permit the witness to answer, probably on the ground that

the questions posed did not constitute proper cross-examination.

In the Lee case the affidavit for the search warrant was made by the sheriff of Caddo County on information furnished him by the chief of police of Anadarko. The court approved the affidavit and search warrant as to wording, but the county attorney and the court permitted counsel for the defense to go back of the affidavit and show that the affiant sheriff actually had no personal knowledge of the matters positively sworn to, but in fact made the affidavit upon information and belief. That case does not govern for the reason that in the within case the county attorney interposed timely objections.

It is next urged that "The trial court erred in ruling that the affidavit for search warrant and the warrant were defective and insufficient because they were issued in the name of John Doe."

Most of the cases from this court dealing with "John Doe" warrants involve the search of residential or commercial buildings, or real estate. The same protection afforded a home against unreasonable search and seizure, Art. II, § 30, Okl. Const., has been held to apply to one's motor vehicle. Strong v. State, 42 Okl.Cr. 114, 274 P. 890; Bush v. State, 64 Okl.Cr. 161, 77 P.2d 1184.

This court has many times held that where an affidavit for a search warrant under the prohibition liquor law particularly describes the place to be searched so that no discretion is left to the officer making the search, the description of the place will be sufficient. Cahill v. State, 38 Okl. Cr. 236, 260 P. 91; Ross v. State, 38 Okl. Cr. 252, 260 P. 90; Hughes v. State, 78 Okl.Cr. 240, 147 P.2d 176.

We have also said that if the name of the party owning or occupying the premises to be searched is known, it should be stated in the affidavit and in the search warrant, but that it is not absolutely necessary, where the place is otherwise particularly described. Gransbury v. State, 64 Okl.Cr.

423, 82 P.2d 240; Crim v. State, 68 Okl. Cr. 390, 99 P.2d 185. See in this connection: United States v. Diange, D.C., 32 F. Supp. 14; United States v. Fitzmaurice, 2 Cir., 45 F. 133; Dixon v. United States, 5 Cir., 211 F.2d 547; Prater v. Commonwealth, 216 Ky. 451, 287 S.W. 951; Egner v. Commonwealth, 217 Ky. 503, 289 S.W. 1108; Henry v. Commonwealth, 312 Ky. 491, 228 S.W.2d 32.

While with the elimination of the improper cross-examination of deputy sheriff Bliss it is doubtful that the evidence was sufficient to show that affiant actually knew, that the automobile in question was owned by the person found driving it at the time of the service of the search warrant, it did have a state tag and it requires no great effort to ascertain from the Oklahoma Tax Commission the name of the person to whom the tag was issued. It is true, no doubt, as argued by the State, that major dealers in illicit intoxicants use delivery boys, and that an officer could never be sure as to who might be driving a specific vehicle at any given time, still it seems to us that the proper practice should be to name the registered owner and then add, "John Doe" to take in any person who might be driving the car. This thought is in line with previous expressions from this court. See: Denmark v. State, 71 Okl.Cr. 424, 112 P.2d 437, 113 P.2d 608; Vincent v. State, 75 Okl.Cr. 116, 129 P.2d 196; Hammons v. State, 80 Okl.Cr. 33, 156 P.2d 379.

We do not find where this court has ever held, in spite of its criticism of John Doe warrants, that the failure to state the name of the actual owner of a motor vehicle to be searched would constitute reversible error.

But defendant argues that in the search of a motor vehicle it may be said that it involves the search of a person as well, and that where a warrant is sought for the search of any person, such person must be particularly described in the affidavit for search warrant. State v. Skelton, 36 Okl. Cr. 377, 254 P. 754. Whether an officer is searching a home or a motor vehicle, he has a right to search persons in the home or in the motor vehicle for firearms, for his protection, if by the circumstances confronting him such is indicated as necessary.

In the case of Hines v. State, Okl.Cr., 275 P.2d 355, 356, 47 A.L.R.2d 1440, this court held:

"1. A search warrant describing an automobile by its license number is a sufficient authority for the search of a vehicle bearing such number.

"2. It is not essential to the validity for the search of an automobile that the name of the owner of the automobile be given in the search warrant."

In the Hines case it was not developed that the sheriff knew that the automobile belonged to the defendant. The sheriff did not obtain the search warrant. McCann v. State, 87 Okl.Cr. 387, 198 P.2d 436, cited in the opinion.

In the McCann case it was pointed out that there is a distinction in the decided cases between those cases where a warrant is issued for the search of property, and for the search of a person, citing Chronister v. State, 73 Okl.Cr. 367, 121 P.2d 616.

From a consideration of the cases, it is the opinion of this court that while it is the better practice when the search of a motor vehicle is sought, to name the owner in affidavit for search warrant and in the search warrant, with the name of any unknown driver as "John Doe:", we conclude that where the affidavit for search warrant and search warrant are otherwise sufficient, it is not essential to the validity for the search of an automobile that the name of the owner be given in the search warrant.

It is finally urged that "The trial court erred in holding that the affidavit for search warrant does not contain sufficient evidential facts to authorize the issuance of a search warrant."

Counsel for the State says that the affidavit in question is the same that has been used in Tulsa County for many years as a basis for the search of motor vehicles. A copy is made a part of the casemade. We note that while there are blanks in the af-

fidavit for the purpose of filling in facts peculiar to the particular case, that none have been made use of other than the filling in of the description of the motor vehicle to be searched, the name "John Doe", signature of affiant, and date.

Counsel for the defendant contends that the affidavit for search warrant and the search warrant are insufficient, being issued on the basis of information and belief. It is urged that the affidavit simply contains conclusions of the affiant and fails by any stretch of the imagination to set out evidentiary facts within the knowledge of affiant, and that such has uniformally been held insufficient, citing Hannan v. State, 29 Okl.Cr. 203, 233 P. 249, and Southard v. State, Okl.Cr., 297 P.2d 585.

 In the Southard case we attempted to review the cases from this court on the subject, and it would be most difficult for us to state the rule in clearer manner than therein set out in paragraphs two to six, inclusive, of the syllabus.

It is true that the difficulty comes about in applying the law to the facts of a particular case. This is forcibly illustrated by the Hannan case, February 1925, and Smith v. State, April 1925, 30 Okl.Cr. 144, 235 P. 273, 274. The same judge wrote both of these opinions. He frankly stated that "it seems to us that the affidavit in the Hannan Case is on one edge of the twilight zone, and the affidavit here [Smith case] is on the other edge."

The case of Griffin v. State, 95 Okl.Cr. 421, 246 P.2d 424, 426, relied on by the State to support its contention that the affidavit in the within case is sufficient, would appear to be on the same edge of the twilight zone mentioned by Judge Bessey in the Smith case, for while in the Griffin case the affidavit was on an identical printed form as in the within case, there had been added in the blanks, allegations of affiant that he considered additional and peculiar to the case, to-wit:

"'I know that Winnie Johnson [owner of the automobile] and John Doe are delivering whiskey on the streets and alleys in the City of Tulsa in this automobile. I know that Winnie Johnson retails whiskey."

If there is one thing the Griffin case illustrates it is that this court will try hard to uphold an affidavit for a search warrant and a search warrant if it can from the language used possibly be concluded that evidentiary facts are set out. Illustrations of such fact may be gleaned from a study of the cases cited in the Southard case. And while a printed form has been approved by this court, see Shiever v. State, 94 Okl.Cr. 37, 230 P.2d 282, and Southard v. State, supra, it is difficult to imagine a printed form that would apply to every motor vehicle. The facts in each case are bound to vary.

It is argued that to require the affiant to swear to evidentiary facts would force him to commit perjury. Such argument is an admission that some officers signing an affidavit do so solely on hearsay. Possibly information given by some spotter or informer that might be true or might be wholly false. The person signing an affidavit for a search warrant should make some inquiry, should become convinced from what he sees and learns that there is basis for the search. A moving vehicle presents a greater problem than stationary property, a house, commercial building, etc., but it is not insurmountable. The vehicle may be seen moving along alleys, stopping at hotels, rooming houses, and places where whiskey is used and may even be obtained. The driver or companion may be seen taking packages in. This would not justify an officer in making an arrest where it could not be determined from observation whether or not the packages might as likely contain shoes or other merchandise. However, such surreptitious maneuvers by known bootleggers, along with other facts peculiar to the case, would justify a magistrate in issuing a search warrant. The facts peculiar to the particular case could be added in the blanks left for such purpose. We do not think that is asking too much, or placing an undue hardship on the officers.

We must keep in mind what we have heretofore said, that once the magistrate is satisfied that probable cause has been shown and issues the warrant, one will not be permitted to go behind the affidavit and show that the officers did not have sufficient knowledge of the charges alleged in the affidavit.

This principle came about, as pointed out in the Southard case [297 P.2d 588]:

"* * * for the reason that an examining magistrate has been recognized as something more than an automaton. It is his duty to examine the affidavit presented to see whether or not it fulfills the requirements of the law, and not only that, to determine that the person presenting the affidavit knows its contents and wants to and does swear to the same. It is a solemn instrument, not to be lightly made, because it is the key that opens the citizen's door to the officers to search his home, or his place of business for evidence of the crime that may be charged. It is the vehicle provided by the Constitution that permits the invasion of the citizen's privacy. Therefore we have said that the affidavit and search warrant should be strictly construed [citing cases]; though a technical construction should not be placed thereon which destroys the true meaning [citing cases]."

The pertinent portion of the affidavit complained of reads:

"William L. Bliss, being first duly sworn, upon oath deposes and says: That certain intoxicating liquor is being sold, stored, transported, given away, and otherwise furnished; and is being kept for the purpose of being sold, stored, transported, given away, and otherwise furnished in violation of the prohibitory laws of the State of Oklahoma; the kind and description of said intoxicating liquor being as follows, to-wit: Wine, Beer, Whiskey and Other Intoxicating Liquor, and imitations thereof and substitutes

therefor, the exact quantity thereof being unknown.

"That said intoxicating liquors are being disposed of and kept by one John Doe, whose more full and correct name is to affiant unknown, in the manner aforesaid, in and/or on the following described motor vehicle, situated in Tulsa County, Oklahoma, to-wit: A certain 1955 Mercury Coupe, bearing 1956 Oklahoma license No. 37–269 which said motor vehicle is being used in secreting, storing and transporting intoxicating liquors in and on the streets and alleys of the City of Tulsa and the highways and roads of Tulsa County, Oklahoma."

We conclude that the trial judge in the district court correctly analyzed Southard v. State, supra, and the cases cited, and applying the principles therein announced held the above affidavit to be insufficient. Some facts stated in the affidavit particularly applicable to John Bill Edwards and the use of the automobile in question could easily have turned the scales and required approval.

By reason of the defects in the affidavit for the search warrant and the warrant, the question reserved by the State is resolved in favor of the defendant in error.

BRETT, Presiding Judge, and NIX, Judge (concurring).

The inhibition against unlawful search and seizure in the Oklahoma Constitution, Art. 2, Sec. 30, was copied almost verbatim from the Fourth Amendment of the Constitution of the United States as follows:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, describing as particularly as may be the place to be searched and the person or thing to be seized."

In Edwards v. State, 83 Okl.Cr. 340, 177 P.2d 143, 145, in relation to the foregoing constitutional provision, it was said:

"The right of search and seizure is in derogation of the guaranties of the Constitution of the United States, the State of Oklahoma, and against the invasion of the privacy of the people. This guaranty has long been extended to include automobiles. Suffice, it to say, that these guaranties were born of the pre-revolution days, when the homes of the people were invaded by the British Red Coats and searched with or without the slightest reason, provocation, or authority of law. It was from such experiences that the constitutional barriers against its wrongful use have been erected. But the necessities of the law and its effective enforcement required that officers of the law be extended the right to search and seize. This right, in proper cases and when properly authorized and executed, was found to be an essential adjunct to proper protection to the public against law violators. It was recognized as an essential instrument in the detection and suppression of crime, and in the disclosure and seizure of contraband and the instruments of crime.

"The people recognized that in granting the right to search and seize, they were doing so in derogation of one of their most sacred rights. To prevent abuses, its use was permitted under strict prescriptions of law. The barriers, which the people erected to prevent its misuse, are, the 4th Amendment to the United States Constitution, * * *" and, "Article 2, section 30, of the Bill of Rights of the Constitution of the State of Oklahoma, * * *.

"These provisions, this court has held, secure the individual in his person, his home, and his property, from invasion through unbridled and unrestrained executive or administrative will. Gore v. State, 24 Okl.Cr. 394, 218 P. 545; Best v. State, 32 Okl.Cr. 89, 240 P. 159; Keith v. State, 30 Okl. Cr. 168, 235 P. 631; State v. Coburn, 68 Okl.Cr. 67, 95 P.2d 670.

"Moreover, it has also been held that the protection against unlawful search and seizure extends to all equally, those justly suspected or accused, as well as to the innocent. Wallace v. State, 42 Okl.Cr. 143, 275 P. 354.

"The constitutional provisions in the Bill of Rights do not prevent all searches and seizures but only those that are unreasonable and in violation of law. However, it is not permissible under such provisions to whittle away the substantial guaranties, limiting the use of a search warrant, and, thereby, permit an abuse of its use. Abbott v. State, 30 Okl.Cr. 98, 235 P. 550. To prevent the abuse of the right to search and seize, the provisions, under which the right is created, must be strictly construed. However, it is not to be so strictly construed as to thwart the reasonable and proper efforts of officers of the law to detect and prevent crime. These principles apply to searches made with or without a warrant, and to automobiles, as well as private dwellings. Strong v. State, 42 Okl.Cr. 114, 274 P. 890; Perry v. State, 72 Okl. Cr. 149, 114 P.2d 185."

Griffin v. State, 95 Okl.Cr. 421, 246 P.2d 424, 426, which is relied on by the state for sustaining the reserved question, is, as we realized when it was written, in the twilight zone. In that case, however, positive allegations were contained therein, which buttressed the allegations in the printed portion of the affidavit. The allegations in the Griffin case are: "I know that Winnie Johnson and John Doe are delivering whiskey on the streets and alleys in the City of Tulsa in this automobile. I know that Winnie Johnson retails whiskey." The allegations cannot strictly be denominated ultimate conclusions, for they are allegations of positive facts in support of the preceding detail of facts therein set forth. These allegations removed the Griffin case from the realm of speculation and suspi-

cion. They placed the automobile definitely in the service of a known whiskey dealer who was, therein, engaged in violating the prohibition act. There was, then, no exploratory search, in the Griffin case, based upon mere suspicion within the condemnation of O'Dell v. State, 80 Okl.Cr. 194, 158 P.2d 180. Nevertheless, in the Griffin case, it would have been better to have detailed more primary basic facts which were undoubtedly available.

The vice of the affidavit herein involved is that under its naked allegation, the deletion of the description of the automobile herein involved, and the insertion of the description of the automobile of any law abiding citizen might subject him to an unlawful search and seizure on nothing more than suspicion for the purpose of persecution, harassment, or embarrassment. Every automobile would therefore become liable to search and seizure on the basis of sheer suspicion.

The affidavit at bar could have so easily been removed from the realm of doubt, for, the owner of the automobile was a known bootlegger, the automobile was undoubtedly registered in his name, no doubt he had been observed making deliveries in and about Tulsa under circumstances and conditions which might have been readily detailed, which would have brought the case within the purview of Baker v. State, 28 Okl.Cr. 408, 231 P. 320, wherein this Court said:

"There are three forms of affidavits for search warrants more or less prevalent.

"(1) Affidavits on mere information or belief.

"(2) Affidavits importing positive knowledge of the possession of the instruments or things used or obtained in violating the law.

"(3) Affidavits setting out facts showing probable cause for a belief that the law has been violated by the accused and facts showing probable cause for believing that the accused is in possession of the instruments used in its violation or of the products of its violation.

"Method numbered 1 is always bad. Method numbered 2 may be employed where the affiant can truthfully state of his own personal knowledge that the law has been violated and that the accused is in possession of the physical evidence demonstrating that fact. Method numbered 3 is sufficient in every case, and is therefore the safer method."

In the body of the opinion, 231 P. at page 321, it was further said:

"The affiant should swear to facts showing probable cause for his belief. That does not mean that the affiant must know absolutely that the person is a thief, or has liquor in his possession, or is guilty of some other offense. To make an affidavit based on positive knowledge of guilt would in many instances be impossible, but the affidavit should state facts upon which the belief is founded. The records of this court have demonstrated, over and over again, that most sheriffs and peace officers (also some county attorneys) do not comprehend the true purpose and requisite features of an affidavit for a search warrant."

Judge Bessey follows this observation with a specific example of how the affidavit in the Baker case could have been drawn by detailing facts which would have given it sufficiency to meet the law.

As Judge Powell so aptly said, the Griffin case shows the extent this Court will go in upholding the officers of the law. But, there must be a limit and the limit was reached in the Griffin case. Only the legislature has the power to alter the situation, and even it is limited by the constitutional inhibitions.

So long as the historical basis and the purpose of the constitutional inhibitions are understood and applied, we shall be reasonably free from unlawful police intrusion. That is, so long as the magistrates to whom application is made for the is-

suance of a search warrant are required by law to issue the warrant only on a complaint in writing executed under oath detailing the facts tending to establish probable cause upon which the warrant is sought. He should be more than a mere automaton for the officer seeking the search warrant. Unless the magistrate is of the opinion that sufficient facts have been detailed to establish probable cause, the search warrant should not be issued, 22 O.S.1951 § 1224, 37 O.S.1951 § 84, and that is a matter to be determined within his sound judicial discretion.

This case has caused us great concern and it is only after long deliberation that we have concluded to concur. We were torn between our desire to uphold the enforcement of the law by the government on the one hand, and the protection of the individual rights of the people on the other. We have resolved the issue in favor of the rights of the citizen and his great heritage, purchased at the price of blood to be secure in his person, his home, his papers, and his effects against unlawful searches and seizures. The fact that an occasional law violator might benefit is of little consequence when measured by the rights of those citizens who have violated no law to be free from the ravages of police intrusion that might become unrestrained. This must be so, lest America degenerate into a police state so akin to the characterization so aptly made: "Whether it be * * * Communist Russia, or their lesser followers, the result is the same. Every day they repudiate every principle of the Bill of Rights. * * * They are subject to searches and seizures by spies and inquisitors who haunt the land. * * * Whatever these governments are, they have one common denominator—the citizen has no assured rights."

One of the most certain deterrents to the establishment of a totalitarian government in America is to prevent the destruction of the safeguards against unreasonable searches and seizures. By the Constitution and vitalizing statutes, individual rights are assured under limitations which say to the government, "This far you shall go but no farther." This is the foundation underlying citizenship in this country which gives it substance and keeps it from degenerating into a thing of specious and speculative value. But, to be efficacious, these constitutional and statutory rights must be enforced.

On this premise, we concur.