DADE v. STATE.

No. 29510. April 29, 1941.

*112 P. 2d 1102.*

678

Earl Boyd Pierce and Ray M. Pierce, both of Muskogee, for plaintiff in error.

Douglas Garrett, Co. Atty., and P. W. Jones, Asst. Co. Atty., both of Muskogee, for defendant in error.

DAVISON, J. This proceeding was instituted by the state of Oklahoma on the relation of the county attorney of Muskogee county to confiscate and forfeit an Oldsmobile coupe automobile belonging to plaintiff in error for being used to transport liquor in violation of section 2646, art. 4, chap. 16, O. S. 1931.

The parties will hereinafter be referred to by their trial court designation of "plaintiff" and "defendant," respectively.

After waiver of a jury, trial by the court, and judgment for plaintiff, defendant appealed.

The alleged error in the trial proceedings presented for review herein is the court's refusal, upon motion of the defendant, to suppress evidence of the finding of liquor in the "turtleback" or "back end" of the car when same was unlocked and searched without a warrant by John Baxter, sheriff of Muskogee county. The basis of defendant's contention that said evidence was inadmissible is that the search during which the liquor was found was unlawful and in violation of section 30, art. 2, of the Oklahoma Constitution (sec. 13442, O. S. 1931).

The undisputed facts concerning the search in question are substantially as hereinafter related.

On March 11, 1936, the sheriff and his deputies conducted a raid for intoxicating liquor upon the defendant's place of business in Muskogee. After arresting the defendant and incarcerating him

in the county jail in said city, Baxter and one of his deputies, Brant Fisher, encountered the car in question parked on a street near the scene of the raid. It had been driven there and was occupied at the time by one Pearlie Griffie. Upon finding that the keys Miss Griffie had would not unlock the "turtleback" of the car, Baxter obtained one from Dade at the jail, returned to the car, unlocked the "turtleback" and found therein several packages, described as "lugs" containing whisky.

On behalf of the plaintiff it is asserted that no warrant was necessary for the above-described search for several reasons, the first being that it was made with the defendant's consent. As establishing Dade's consent to the search of the "turtleback" of his car without a warrant, plaintiff relies upon the fact that after placing Dade in jail, Baxter returned there, asked Dade for the key, and Dade complied with said request or command by taking the key out of his pocket and handing it to Baxter. There is a conflict in the testimony as to whether Dade surrendered the key only after a threat by Baxter to break open the turtleback if Dade refused to give up the key, or whether the key was surrendered without such a threat. Dade's testimony answered this question in the affirmative, while Baxter denied that he ever made such a threat.

The general rule in regard to the matter before us is that a defendant's consent to an officer's search without a warrant constitutes a waiver of his constitutional immunity from such search, and he cannot thereafter effectively challenge the admissibility of the evidence obtained thereby.

However, as said at 56 C. J. 1180, to constitute such a waiver:

". . . It must be clearly shown that consent given to an otherwise illegal search was voluntary, that is, that it was free from coercion, duress, or fraud, and not given merely to avoid resistance. As the constitutional guaranty is not dependent upon any affirmative act of the citizen, the courts do not place the citizen in the position of either contesting an officer's authority by force, or waiving his constitutional rights; but instead they hold that a peaceful submission to a search or seizure is not a consent or an invitation thereto, but is merely a demonstration of regard for the supremacy of the law. . . ."

See, also, the extensive quotation from United States v. Rembert, 284 F. 996, in Smith v. State, 34 Okla. Cr. 434, 246 P. 1109. In adhering to the rule that the defendant's submission to an unlawful search must be voluntary, with a desire to invite search, and not given merely to avoid resistance, the courts have gone far in construing conduct which might otherwise indicate consent or acquiescence as not constituting an invitation or consent to an illegal search, but merely a submission to official authority. See, for instance, Maupin v. State, 38 Okla. Cr. 241, 260 P. 92; Whitford v. State, 35 Okla. Cr. 187, 249 P. 430; Hancock v. State, 35 Okla. Cr. 96, 248 P. 1115; Smith v. State, 34 Okla. Cr. 434, 246 P. 1109; Smith v. Commonwealth, 283 Ky. 492, 141 S. W. 2d 881, and cases cited in the annotations following 74 A. L. R. 1418, 39 A. L. R. 822, and 27 A. L. R. 709. No useful purpose would be served in attempting a review of any considerable number of the cases referred to. None of them, so far as we have been able to ascertain, involved a situation identical with the present one. In Barnett v. State, — Okla. Cr. —, 109 P. 2d 243, the keys to the defendant's automobile were taken from him in order to search same for the evidence therein declared inadmissible, but it does not appear that the defendant himself had anything to do with transmitting said keys to the officers. There have been many cases, however, in which the defendant's consent was procured by the officer under circumstances which the courts have said amounted to duress or coercion. Such a case was Marple v. State, 51 Okla. Cr. 240, 1 P. 2d 836, wherein the officer procured the defendant's permission to search the latter's car, after blocking the road in front of said car and while carrying a gun. Some of the authorities have applied the doctrine

of "implied coercion" in situations not materially different from the present one, where there was no affirmative act of coercion on the part of the officer, but by the mere force of the circumstances under which it was obtained, the defendant's consent could not be said to have been wholly free and voluntary. Examples of these are State v. Lock, 302 Mo. 400, 259 S. W. 116; Amos v. United States, 255 U. S. 313, 65 L. Ed. 654; State v. Wuest, 190 Wis. 251, 208 N. W. 899; Biggs v. State, 201 Ind. 200, 167 N. E. 129; United States v. Baldocci (D. C., S. D., Cal.) 42 F. 2d 567; Ray v. United States (C. C. A.) 84 F. 2d 654; Duncan v. Commonwealth, 198 Ky. 841, 250 S. W. 101; State v. Lindway, 294 Mass. 505, 2 N. E. 2d 490; United States v. Hoffenberg (D. C., N. Y.) 24 F. Supp. 989. In none of these cases was there any distinct act of physical force or violence on the part of the officers, but the fact that they were in the physical presence of the defendant, in their official capacity, seems to have been the important consideration inducing a finding of implied coercion. We think that in cases where the defendant is physically restrained, as in the custody of the officer or already incarcerated, the doctrine of implied coercion should apply more especially than where the defendant is not so restrained; and the evidence should clearly establish that the defendant not merely acquiesced in the search but that he specifically, unequivocally, and actively consented to it. See Karwicki v. United States, 55 F. 2d 225. As the defendant in the present case was already confined in jail and under physical restraint by Baxter when he complied with the latter's request for the key, we think the situation by nature was "colored" or "tinged" with official coercion. See People v. Lind, 370 Ill. 131, 18 N. E. 2d 189, and Biggs v. State, supra. This circumstance (negativing any idea that the parties were on an equal footing) suggests that Dade's compliance with Baxter's request for the key was more likely due to hope or fear (see United States v. Baldocci, supra) and was a reluctant submission to official authority rather than a free and voluntary invitation to Baxter to search his car without a warrant. Since there was no other evidence that Dade gave such invitation or consent, we are unable to bring ourselves to the conclusion that by merely handing the key to Baxter under the circumstances described, Dade thereby waived his constitutional protection against the search of his automobile without a warrant. We think this conclusion is not only in accord with the weight of authority, but is warranted upon considerations of individual liberty and justice. Before a court holds that a citizen has waived such protection, there should be convincing evidence to that effect. Nueslein v. District of Columbia, 115 F. 2d 690. The trier of facts should be slow in finding intentional and voluntary relinquishment of immunity from search without a warrant when from the evidence the matter is somewhat in doubt. United States v. Ruffner, 51 F. 2d 579. Although criminals should be apprehended, prosecuted and convicted, it is of equal importance that the constitutional rights of all people to protection against unreasonable searches and seizures should be upheld. United States v. Hoffenberg, supra.

The next rule relied upon by plaintiff in support of its position is that where an offense is committed in the presence of an officer an arrest and search may be made without a warrant. In urging the applicability of the stated rule to the present case, counsel refers to the asserted fact that Pearlie Griffie, driver of the automobile in question, had whisky or gin in her purse in the front seat of the car at the time of its seizure, and to Baxter's testimony that at the time he first proceeded to the automobile he smelled whisky. Pearlie Griffie did testify that while sitting in the car at the time of its seizure, she had "about a half of a half pint" of whisky in her purse, but there is no evidence that there was any other intoxicating liquor in the car except that in the locked turtleback. Both Baxter and

the deputy, Fisher, testified that they saw no liquor in the front seat of the car. From Baxter's testimony no other conclusion can be drawn except that he had no knowledge that Miss Griffie had intoxicating liquor in her purse until at the jail, after the search of the automobile, she opened the purse and revealed a bottle containing a substance she then informed him was gin. Although Baxter at one place in his testimony stated he smelled liquor in the car, he thereafter said the odor he smelled was on the breath of Miss Griffie. Thus there is no proof that Baxter smelled any liquor which formed the basis of the charge against Dade, and there was no proof that an offense of any character was being committed in his presence. Plaintiff relies upon the rule that an offense is committed in the presence of an officer within the contemplation of the law when the officer is apprised by any of his senses that a misdemeanor is being committed by the person arrested, prior to the arrest, citing Matthews v. State, 67 Okla. Cr. 203, 93 P. 2d 549. This rule does not apply to the present case, since the evidence fails to show that the officers here were apprised by their senses of smell, sight, or any other, of the presence of liquor in the Dade car. It is not claimed that Miss Griffie was committing either a misdemeanor or a felony, and Baxter himself admitted that she was not drunk, nor had been drinking in a sufficient quantity to justify a charge of drunken driving against her. The fact that when the turtleback was searched it was found to contain liquor did not render the search lawful. See United States v. Rembert and Nueslein v. District of Columbia, supra. The officers must have been apprised of the commission of an offense *at the time of the search* in order to justify same without a warrant. Among other authorities hereinafter cited, see Black v. State, 63 Okla. Cr. 317, 74 P. 2d 1172; Gragg v. State, 66 Okla. Cr. 163, 90 P. 2d 454. Here, there was no evidence that the officers had knowledge from any source that the car in question was being used

to transport whisky, until they found same during their search.

This brings us to plaintiff's next proposition, namely: "Search of an automobile without a warrant is not an unreasonable search if the search is upon probable cause." In urging the applicability of this proposition to the present case, counsel refer to Baxter's testimony as establishing such pertinent facts as the following: that he knew the car in question belonged to the defendant; that it circled the block where he was making the raid two or three times, and finally stopped; that he had information the automobile was being used to haul liquor, and that he knew defendant was a bootlegger.

Plaintiff's argument sets forth an accurate statement of the facts except as to one vital particular which concerns Baxter's knowledge that the car in question was being used to transport liquor. It is true that Baxter did testify he "had information" that Dade "was hauling liquor," yet when asked if he had any information that the defendant was doing so, at the time in question, he answered, "No, not that night." Baxter also admitted his conception of his authority was that it extended to searching without a warrant any car whose owner he knew was engaged in selling whisky.

Plaintiff relies upon the general rule that it is not necessary, in order to establish probable cause for an arrest or search without a warrant for liquor illegally possessed or transported, to show that the officer making the arrest or search had before him legal evidence of the commission of such offense, but is sufficient if he has knowledge of facts that would lead a reasonably prudent man to believe that same was being done. In most of the cases cited by counsel, in which the rule was applied, the officer making the arrest or search was apprised either by his own senses or by information from other sources of facts which rendered the rule applicable, and therefore do not apply to the situation herein presented. Here, there was

no proof that the officers searching Dade's automobile previous to the search either smelled any of the liquor being transported therein or had any information that said car was being used at that time for such purpose.

The only cases cited by plaintiff other than those above referred to are United States v. Bateman, 278 F. 231; Bell v. United States, 285 F. 145; People v. Case, 220 Mich. 379, 190 N. W. 289, 27 A. L. R. 686; Houck v. State, 106 Ohio St. 195, 140 N. E. 112; and Machado v. State, 112 Tex. Cr. A. 538, 17 S. W. 2d 1060.

The last-cited case was one in which an officer looked in an automobile and found a gallon of whisky. When the cause was first considered by the appellate court, said court seems to have been of the opinion that under the circumstances the officer had probable cause for searching the car without a warrant, and that, therefore, the trial court committed no reversible error in denying the defendant's motion to suppress the evidence of what was found in the search. In considering the cause on rehearing, however, it was said that the error, if any, was harmless in view of the defendant's own admission that the automobile contained whisky. Thus we cannot consider this case as unequivocal authority for plaintiff's position herein. On the basis of the other cases cited on behalf of the plaintiff, however, it might be argued that an officer's search of an automobile without a warrant may be justified upon his suspicion that it is transporting intoxicating liquor, or upon the officer's honest belief that the person in charge of it is in the act of violating the law. This view does not represent the weight of authority, however, nor has it been adopted in more recent decisions. See United States v. Kaplan, 286 F. 963, 973; Park v. United States, 294 F. 776; Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790; Hamilton v. State, 149 Miss. 251, 115 So. 427; Eiler v. State, 196 Ind. 562, 149 N. E. 62; Tranum v. Stringer, 216 Ala. 522, 113 So. 541; see, also, 56 C. J. 1195, and the authorities therein cited. In Carroll v. United States, supra, it was pointed out that "it would be intolerable and unreasonable if an officer were authorized to stop every automobile on the chance of finding liquor and thus subject to all persons lawfully using the highway to the inconvenience and indignity of such a search." In Tranum v. Stringer, supra, it was said:

"The rash and the unduly suspicious officer cannot justify upon belief which may to him seem sufficient. There must come to him facts from sources which a prudent man deems reliable, and of sufficient probative force to lead such man to a reasonable belief; there must be probable cause to believe."

The cases in this jurisdiction are to the same effect. See Evans v. State, ___ Okla. Cr. ___, 110 P. 2d 621; Barnett v. State, supra; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219; Reininger v. State, 59 Okla. Cr. 406, 60 P. 2d 629; Washington v. State, 60 Okla. Cr. 316, 64 P. 2d 926. The situation in the present case is similar in one of its aspects to Morris v. State, 66 Okla. Cr. 384, 92 P. 2d 609. There liquor was found in a car belonging to one of the defendants during a search without a warrant, after the officers had smelled liquor on his breath. Said search was held to be unlawful. As to another feature, this case is similar to Robinson v. State, 197 Ind. 144, 149 N. E. 891. There the reason given for the officer's search of the defendant's car without a warrant was that he was a known bootlegger, and the court held that such knowledge on the part of the officer making the search did not furnish him probable cause for said search. In view of the foregoing authorities and the evidence in the present case, it is clear that the search of Dade's Oldsmobile by Baxter was without probable cause.

Plaintiff's fourth proposition is that a warrant is not necessary for searching an automobile transporting liquor in a proceeding like the present one to forfeit said vehicle. This contention seems to be based upon the theory that such vehicle is contraband and is forfeited by operation of law when the trans-

portation of the liquor commences. Thus, in interpreting Michigan's prohibition law relative to the seizure and forfeiture of equipment used in violating said law, the Supreme Court of that state, in People v. Case, supra, said:

"By these direct and plain provisions of the statute, the person possessing or transporting intoxicating liquor contrary to law has no property rights in it. When its illegal possession or transportation begins, it at once becomes the property of the state. One searching for and seizing it does not search for and seize property of the person in illegal possession, and, if the state makes the seizure, it is but taking possession of its own property."

The Michigan court then cites several cases as holding that contraband property, as distinguished from privately owned property, forfeited to the state or government, can be used in evidence by the prosecution though irregularly seized. In our opinion, none of the cases cited are directly in point, except United States v. Fenton, 268 F. 221, and the view therein expressed has not been generally adopted. In addition to the annotations hereinbefore mentioned, see those beginning at 88 A. L. R. 348, 52 A. L. R. 477, 41 A. L. R. 1145, 32 A. L. R. 408, 24 A. L. R. 1408, and 13 A. L. R. 1316. As authority for its position that the trial court in the present case correctly refused to suppress the evidence in question, though obtained without a search warrant, plaintiff relies upon the decision in Boyd v. United States, 116 U. S. 616, 6 U. S. 524, 29 L. Ed. 746 (cited in People v. Case, supra) holding that:

"Search and seizure of a man's private papers to be used in evidence for the purpose of convicting him of a crime, recovering a penalty, or of forfeiting his property, is totally different from the search and seizure of stolen goods, dutiable articles on which the duties have not been paid, and the like, which rightfully belong to the custody of the law."

We are not convinced, however, that the quoted language supports plaintiff's argument as to property subject to forfeiture under the liquor prohibition laws, especially in view of later opinions of the United States Supreme Court and the federal courts apparently recognizing that the fact that property may be contraband under the prohibition laws does not justify its search without a warrant. See Park v. United States, supra; Husty v. United States, 282 U. S. 694, 75 L. Ed. 629, 74 A. L. R. 1407, and the annotations thereto.

As reason for our adoption of the doctrine of the Michigan case (People v. Case, supra) plaintiff cites section 2645, O. S. 1931, and Lee v. State, 180 Okla. 643, 71 P. 2d 1090, showing that in this state a person in possession of liquors, vessels, and other implements kept or used for the purpose of violating our state prohibition law, has no property rights therein, and its unlawful seizure will not authorize a court order for the return of same to him. In our opinion, reasons that may exist for refusing a return of such property to the person from whom it was seized have no proper place in our present consideration. In Lee v. State, supra, this court followed Rosanski v. State, 106 Ohio St. 442, 140 N. E. 370, on the principal point there involved. That case and others besides People v. Case, supra, apparently adhere to the doctrine plaintiff contends for, on the ground that the evidence or articles seized were contraband and not the proper subject of private ownership. See cases cited in the annotation at 32 A. L. R. 408, 410. Notice, also, that the annotator questions whether there is any logical connection "between the fact that the articles ought not to be returned to the person from whom they have been unlawfully taken and their use in evidence." The majority opinion promulgated in the case of State of Missouri v. Owens, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383, answers this question in the negative, and in our opinion that is the only logical way to answer it and at the same time preserve the rights guaranteed in the 4th and 5th Amendments to the Federal Constitution and sections 27 and 30, article 2, of our State Constitution. See Gore v. State, 24

Okla. Cr. 394, 218 P. 545. In the Missouri opinion it is demonstrated to our satisfaction that the view therein adopted follows the majority as well as the better rule.

It would be impracticable in the present opinion to enumerate and discuss all of the various rules and principles taken into consideration by the different courts of this country that have refused to admit unlawfully obtained evidence of an accused's violation of the national and various state prohibition laws. The annotations we have cited furnish ample material for an academic study of the subject. For the purpose of a decision herein, we think it sufficient to say that we choose to align ourselves with what we consider the majority of the better reasoned opinions and decline to follow the doctrine enunciated in People v. Case, supra. In addition to the authorities hereinbefore cited, see Hoyer v. State, 180 Wis. 407, 193 N. W. 89, 27 A. L. R. 673.

Another case cited in support of plaintiff's contention that a search warrant is unnecessary for obtaining evidence of an automobile's unlawful use in a proceeding to forfeit said vehicle is One Hudson Super-Six Automobile v. State, 77 Okla. 130, 187 P. 806. There, in referring to chapter 188, S. L. 1917, sec. 1 (sec. 2646, O. S. 1931, 37 Okla. St. Ann. § 111) it was said:

"We think that the Legislature, by the use of the language, 'shall be forfeited to the state by order of the court issuing the process by virtue of which such vehicles and animals were seized, or before which the persons violating the law or the vehicles or animals are taken by the officer or officers making the seizure,' clearly contemplated a seizure without warrant. . . ."

We have no fault to find with the above language. It is just the interpretation given it by counsel for the plaintiff that we cannot uphold. In making the above statement this court undoubtedly meant that there was nothing in the quoted language of the statute to preclude a search without a warrant, and in that sense it "contemplates" or comprehends such a search, rather than that said language in itself specifically authorizes such a search. With this we agree, for it must be presumed that in passing the act, the Legislature was cognizant of the general common-law rule allowing searches and arrests without a warrant made upon probable cause, or where an offense is committed in the presence of an officer, and of the incorporation of the latter principle in section 2640, O. S. 1931 (sec. 3617, R. L. 1910; 37 Okla. St. Ann. § 89) in the following words:

"When a violation of any provision of this chapter shall occur in the presence of any sheriff . . . or other officer . . . it shall be the duty of such officer, without warrant, to arrest the offender and seize the liquor, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used. . . ."

The above interpretation of the language used in the Hudson Super-Six Case is not only in accord with the statement of this court in McAdams v. State, 101 Okla. 267, 219 P. 145, that the Hudson Case decides the right of officers to seize a car without a warrant "when it is *known* to be used in violation of the law" (emphasis ours), but it is the only one that can be presumed in view of our constitutional inhibition against unlawful searches and seizures. In this connection, see, also, One Dodge Touring Car v. State, 97 Okla. 21, 222 P. 162.

The closing argument in plaintiff's brief is to the effect that since Dade on cross-examination by the county attorney admitted that the whisky found in the car was his, he thereby precluded himself from predicating error upon the court's refusal to suppress plaintiff's evidence of the discovery thereof. There is no merit to this contention in view of the fact that Dade gave such evidence over the protest and objection of his counsel, and after the court had overruled his motion to suppress such evidence.

In accord with the views hereinbefore expressed and authorities cited, it is the opinion of this court that the trial court erroneously overruled defendant's motion to suppress the evi-

dence of the finding of whisky in his automobile during the search in question. Said court's judgment is therefore reversed, with directions to grant the defendant a new trial.

WELCH, C. J., and RILEY, BAYLESS, GIBSON, HURST, and ARNOLD, JJ., concur. CORN, V. C. J., and OSBORN, J., absent.