STATE ex rel. SPRINGER v. ONE 1940 MERCURY 5-PASSENGER COUPE (LECHE, Intervener).

No. 33705.   Oct. 3, 1950.

*223 P. 2d 121.*

J. M. Springer, Co. Atty., of Nowata, for plaintiff in error.

Paul O. Simms, of Vinita, for defendants in error.

HALLEY, J. This is an appeal by the State of Oklahoma on relation of the county attorney of Nowata county from an order of the county court of that county sustaining a motion to suppress the evidence in a forfeiture and confiscation proceeding against one 1940 Mercury 5-passenger coupe, owned and operated by Ted Haun; Ted Haun, individually; and Melburn Leche, intervener.

It is alleged that on or about March 27, 1948, the above described car was being used by Ted Haun in the unlawful transportation of intoxicating liquor from one place to another within Nowata county, Oklahoma, in violation of section 111, Title 37, O. S. 1941; that while the owner and driver, Ted Haun, was engaged in the commission of a misdemeanor in the presence of officers, he was arrested by such officers, who found and discovered liquor in the car, making it subject to forfeiture to the state.

Melburn Leche was permitted to intervene. He pleaded that on March 8, 1948, Ted Haun had executed and delivered to him a mortgage on the car in the sum of $433.24, and claimed a lien for that amount.

Upon hearing evidence on the motion of defendants to suppress the evidence, on the ground that the search and seizure of the car was made against the will of the owner and without a search warrant, and because the search and seizure were unlawful, without warrant or probable cause, and in violation of the Fourth and Fifth Amendments to the United States Constitution and of the Constitution and laws of the State of Oklahoma, the court ordered that the motion to suppress the evidence be sustained; ordered the automobile released; and dismissed the case.

The parties will be referred to as "the State" and "Ted Haun", as they appeared in the trial court.

There is very little conflict in the testimony. Only three witnesses, Ted Haun, Arthur Turner, sheriff of Nowata county, and Arch Sequichie, deputy sheriff, testified. It is not disputed that the arrest, search and seizure were made without a warrant on Highway 60 about eight miles east of Nowata, between 4 and 5 o'clock a.m., and while it was dark. At the time and place named, the sheriff and his deputy were sitting in their car by the side of the road, headed west, with their lights out and their motor running. The sheriff said that they did not sit there over an hour. The deputy said that they sat there quite a while, and that no cars passed them in either direction while they were there. The sheriff testified that their purpose there was to watch for a car reported to have been stolen at Joplin, Missouri. The deputy testified that he was not informed of that fact. Neither of them knew Ted Haun. Ted Haun passed them going west at 40 or 45 miles per hour. He had ten cases of whisky stacked on the floor of his car, behind the front seat, and covered with an army blanket. The officers started after him when he was a short distance beyond where they were sitting. Their lights were turned on, and they flashed a spotlight on Haun's car. The deputy says that they turned the spotlight on the tag of Haun's car and found it to be a foreign license tag. Haun testified that they turned the spotlight on his windshield and other glass, until he could not see to drive. The sheriff testified that as Haun passed them he was moving across the center of the road, driving in such a manner as would have caused them to stop any driver and caution him about his driving. The deputy says Haun was getting over the center of the road, but twice stated that he thought this was due to the defective steering apparatus of the car rather than to Haun's driving. The deputy had driven the car to town after the arrest. There was no evidence that Haun was drunk or had even had a drink. He testified that due to the blinding spotlight and the thought that highjackers were following him, he stopped his car about a mile from where the pursuit started, and that the officers stopped their car on the pavement some 15 or 20 feet behind him. No other cars were in sight in either direction, and none had met or passed them.

Up to this point, the officers had no evidence whatever to lead them to believe that Haun's car carried liquor. Even after Haun stopped his car, there was nothing to indicate what he was hauling. It was necessary for the officers to enter the car, lift up the blanket, and use the flashlight to determine what was in the car. No one testified that Haun was committing any offense that would have justified an arrest, other than the transporting of liquor, of which the officers had no information. The search and seizure in this case were illegal because there was no search warrant, and no probable cause was shown to exist that would justify a search. The evidence obtained without a warrant was properly suppressed. See Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219, and Dade v. State, 188 Okla. 677, 112 P. 2d 1102.

Two cases from the Supreme Court of the United States have been cited as sustaining the search here: Carroll et al. v. United States, 267 U.S. 132, 69 L. Ed. 543, 39 A. L. R. 790, and Brinegar v. United States, 338 U.S. 160, 93 L. Ed. 1879. These cases are easily distinguishable from the case at bar. In the Carroll case, the defendants had previous to their arrest agreed to sell a case of whisky to the government agents and were driving the same automobile when arrested that they were driving when they previously met the officers. The defendants were seen going back and forth between Detroit,

a known source of supply of liquor, and Grand Rapids. In the Brinegar case, one of the arresting officers had arrested the driver of the automobile five months before for illegally transporting liquor and had seen him loading liquor into a car on at least two occasions during the preceding six months, and knew the driver to have a reputation for hauling liquor. This significant statement was made by Mr. Chief Justice Taft in that case:

"It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official, authorized to search probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

In this case the officers never knew the driver of the car before and had never seen the car. Before they made this arrest they had no reason for suspecting that the automobile contained whisky. They simply took a chance and violated the driver's constitutional rights. Such a seizure is clearly illegal.

Judgment affirmed.

ARNOLD, V.C.J., and GIBSON, LUTTRELL, and JOHNSON, JJ., concur. O'NEAL, J., dissents.

O'NEAL, J. (dissenting). I am unable to agree with the majority opinion herein. There is but little conflict in the evidence. It is not disputed that the search, seizure and arrest were made without a warrant on highway 60 about eight miles east of Nowata between 4 and 5 o'clock a.m., while it was yet dark. At the time the sheriff and his deputy were sitting in their car by the side of the road headed west, with their lights off and their motor running. They had been there about one hour. The sheriff testified that their purpose was to watch for an automobile reported to have been stolen at Joplin, Missouri. Neither the sheriff, nor his deputy, knew Ted Haun. About 4:40 o'clock a.m., Ted Haun passed them going west driving the 1940 5-passenger Mercury coupe here involved. He was traveling about 40 to 45 miles per hour when he passed the officers' parked car, and "kept going from one side of the road to the other." The uncontradicted evidence is that Haun had ten cases of whisky on the floor of his car in front of the back seat covered or partly covered with a blanket. The officers started after him immediately, but not with the view of finding or searching for contraband liquor. Their purpose was to determine whether the car Haun was driving was the automobile which had been reported as stolen at Joplin, Missouri. The lights were turned on and Haun speeded up his car to about 70 miles per hour, and drove in an erratic manner, that is, from one side of the road to the other. The officers pursued him for about one and one-half miles. They then turned their spotlight on the tag of Haun's car and found it to be a foreign license tag. Haun testified that when the officers turned their spotlight on his car the reflection of the light from the windshield so blinded him that he could not see to drive, and that on that account he stopped his car. He did not know that the car pursuing him was being driven by officers. He testified that he thought he was being "hijacked". The officers stopped their car immediately behind Haun's car. Haun got out of his car and, according to the testimony of the two officers, left the car door standing open. Haun denied that, and testified

that the officers opened the car door. But before that the sheriff questioned Haun concerning the ownership of the car Haun was driving and became convinced that it was not the automobile which had been reported to him as stolen at Joplin, Missouri. The sheriff then asked Haun to show his driver's license. Haun did not have it with him but it was later produced. The sheriff then asked Haun what he had in the car. His answer was "you ought to know." The sheriff then looked into the car through the open door. The boxes containing the whisky were partly covered with a blanket but some of them were exposed so as to show the labels on them. What the labels were was not shown, except the deputy sheriff testified that he could tell "what kind it was" by the labels on the boxes. The sheriff then took the car and Haun into custody and directed his deputy, Sequichie, to drive Haun's car in to Nowata. The question is whether or not the search was valid. If the search was not valid it follows that the seizure was also invalid.

There is a contention that the search in this instance began when the sheriff started in pursuit of the automobile Haun was driving. This, under the facts as shown by the uncontradicted evidence, cannot be true.

Under some circumstances, depending somewhat on the gravity of the offense, it might be reasonable for an officer to stop any and all automobiles driving along a highway at a given point, as pointed out by Mr. Justice Jackson in his dissenting opinion in Brinegar v. United States, 338 U. S. 160, 93 L Ed. 1879. Assuming, from example there stated, that a child is kidnapped and it is known that the kidnapper is fleeing in an automobile without a definite description thereof; the officers throw a roadblock around the neighborhood and stop and search every out-going car. That would be a drastic undiscriminating use of the search. The officers would be unable to show probable cause for searching any particular car. However, it would be the only effective way to enforce a roadblock. Mr. Justice Jackson said:

"I should candidly strive hard to sustain such an action executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime."

Somewhat similar circumstances are shown in this case. An automobile had been reported stolen at Joplin, Missouri; the sheriff of Nowata county had been notified and he, with his deputy, were on the highway in the late hours of the night blocking the highway against a possible passage of the thief fleeing with a stolen automobile. The sheriff in such circumstances had the right to stop and question the driver of each and every car that came that way that night, and if facts and circumstances developed that would cause a reasonably prudent person to believe the car was being used for unlawful purposes, to search it. The sheriff pursued Haun's car without any thought as to a possible violation of the liquor laws. Haun, when he observed that he was being pursued, speeded up without any thought that he was being pursued by an officer, but with the belief that he was about to be "hijacked," that is, robbed of his ten cases of whisky. I think the pursuit by the sheriff and the examination of Haun's automobile to ascertain whether or not it was the stolen car for which the sheriff was watching was lawful and reasonable. The validity of the subsequent search of Haun's automobile and the seizure thereof, together with the ten cases of whisky, is the question here involved.

The contention is made that it was in violation of article 2, sec. 30, of the Constitution of Oklahoma, and in violation of the Fourth Amendment to the Constitution of the United States. There is no substantial difference between the provisions of the State Constitution and the provisions of the Amend-

432

ment to the Constitution of the United States. Therefore, the decisions of the Supreme Court of the United States construing the Fourth Amendment to the United States Constitution is of the highest authority. The two leading cases construing said Amendment, as applied to the search and seizure of automobiles traveling along a public highway are: George Carroll et al. v. United States, 267 U. S. 132, 69 L. Ed. 543, 39 A. L. R. 790, and Brinegar v. United States, supra. These two cases clearly point out that it is not every search that is invalid under the Fourth Amendment to the Constitution of the United States. It is only unreasonable searches against which the public is secured.

In the Carroll case, supra, the court said:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The 4th Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

Therein the court quoted with approval from Stacey v. Emery, 97 U. S. 642, 24 L. Ed. 1035, the following:

" 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.' "

In the sixth paragraph of the headnotes to the case of Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879, it is stated:

"Probable cause, such as may justify an arrest or a search and seizure without warrant, is a reasonable ground for belief of guilt; and this means less than evidence which would justify condemnation or conviction; probable cause exists where the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."

All are agreed that people must be secure in their homes and other property from unlawful search and seizure. Likewise, all are agreed that the public has the right to have the laws effectively enforced and to be made secure from law violators and the evil consequences of their unlawful acts. Both are fundamental rights and both must be safeguarded with equal vigilance. In determining whether or not a search and seizure is legal, courts must keep two things in view: (1) The right of an individual to be secure from unlawful search and seizure; and (2) The right of the public to have the laws upheld, respected, and enforced and to be protected from law violators and the evil consequences of their illegal operations. A balance between them must be maintained. Both the rights of the accused and the rights of the public must be considered and protected. Neither should be neglected nor overlooked. Statutory and constitutional rights of individuals are not more sacred than similar rights of the public. In the protection of these rights there must be no distinction. Individual rights must be respected. Laws must be enforced. The public must be protected from law violators. No fancied superior statutory rights of individuals, nor hypertechnical or strained construction of statutory and constitutional provisions must be allowed to obstruct the process of effective law enforcement. That is a responsibility of the courts. It must be discharged with scrupulous care and with equal consideration of the rights of individuals and of the public.

Without going further into detail as to the evidence, I am convinced that the voluntary acts of Haun himself in

stopping his automobile, leaving the door thereof open (I think the clear preponderance of the evidence is that he did leave the door of his automobile open), thus leaving exposed to view part of the boxes containing the liquor with the labels thereon, his evasive answer to the inquiry of the officer as to what was in the automobile, together with the other facts and circumstances, were sufficient to give rise to probable cause, that is, to a belief reasonably arising out of the facts and circumstances known to the officers and unfolded in their immediate presence, that the automobile contained intoxicating liquor which was being transported in violation of the law. That was sufficient to justify the search. I am thoroughly convinced that the search and subsequent seizure were justified.

Therefore, I respectfully dissent.